UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KOVA COMMERCIAL OF NAPLES,
LLC,

      Plaintiff,

v.                  Case No:  2:23-cv-614-JES-KCD

TODD SABIN,

      Defendant.

_____

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on KOVA Commercial of Naples, LLC's (KOVA or Plaintiff) Third Motion for Temporary Restraining Order and First Motion for a Preliminary Injunction (Doc. #31) filed on September 6, 2023. Todd Sabin (Sabin or the Defendant) filed a Response in Opposition (Doc. #36) on September 18, 2023. After KOVA filed a Reply (Doc. #38) with permission from the Court, Sabin filed a motion for leave to amend his response. (Doc. #39). KOVA also filed a request for oral argument. (Docs. ##32-33.) Because a hearing is unnecessary to resolve KOVA's motion, the request for a hearing is denied.[1] For the reasons set

---

[1] "A district court need not hold an evidentiary hearing prior to the issuance of every preliminary injunction." <u>CBS Broad., Inc. v. EchoStar Commc'ns Corp.</u>, 265 F.3d 1193, 1207 n.18 (11th Cir. 2001). Whether to hold an evidentiary hearing is left "to the sound discretion of the district court" and required "only 'where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue.'" <u>Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.</u>, 304 F.3d 1167, 1178 (11th

forth below, Sabin's motion is denied and KOVA's motion is denied
as moot as to the Temporary Restraining Order and is otherwise
granted.

**I.**

The relevant facts were recently summarized by this Court:

> KOVA . . . is a commercial real estate brokerage
> firm that helps clients buy, sell, lease, and rent non-
> residential properties. On or about August 5, 2016,
> [Sabin] became KOVA's Managing/Qualifying Broker. In
> that role, Sabin gained documentary access to KOVA's
> finances, sales, strategy, actual and prospective client
> lists, referral sources, and more. The parties executed
> an operating agreement and Sabin received a forty-five
> percent ownership interest in the firm. The operating
> agreement prohibited Sabin from, among other things: (i)
> working, being employed by, having any ownership
> interest in, or otherwise having any affiliation with
> another real estate brokerage firm in Collier or Lee
> County and (ii) soliciting business or interfering in
> the relationship between KOVA and a client for one year
> following the termination of his interest in the firm.
>
> As time passed, the relationship soured. On or
> about August 4, 2023, Sabin resigned. During his
> resignation meeting, he stated that he planned to
> operate his own brokerage firm and to begin competing
> with KOVA "starting tomorrow." After the meeting, KOVA
> allegedly uncovered a few revelations. First, Defendant
> had owned and operated his own real estate brokerage
> firm, "Todd T. Sabin, P.A." since 2006. Second, upon
> resigning, Defendant removed and took with him all the
> documents in his office. Third, Defendant had been
> sending documents from his firm-issued email account to
> apparently his own personal email accounts for months
> prior to his resignation. These documents include, among
> other things: client contact information, client
> financial information, a client's strategic investment
> and development plan, KOVA's year-end financials,
> management forms, lease summaries, tenant leases, rent

Cir. 2002)(quoting <u>McDonald's Corp. v. Robertson</u>, 147 F.3d 1301,
1312 (11th Cir.1998)).

rolls, and tenant contact information. And forth, Defendant allegedly contacted multiple KOVA clients upon his departure from the firm, including one from whom Defendant obtained a letter stating the client's desire to keep Defendant as their agent.

(Doc. #19, p. 1-3.)

The parties' operating agreement identifies Sabin as a "Class B Member" (Doc. #30, Ex. 1, p. 15)[2] and specifically sets the following restrictive covenants:

**Section 8. <u>Limitations Engaging in Other Businesses.</u>**

a. Notwithstanding anything to the contrary in this Agreement and as a condition precedent and material inducement to admitting the Class B Member, the Class B Member agrees and accepts the following restrictions. For so long as a Class B Member owns an Interest in the Company such Class B Member will not, directly or indirectly, do any of the following: (i) work at or be employed by or have any direct or indirect ownership or profit-sharing interest in any real estate brokerage firm or company located or operating in Collier or Lee County, Florida; or (ii) be affiliated in any manner with any other real estate brokerage firm or company located or operating in Collier or Lee County, Florida, nor shall act, in its individual capacity, as a sales associate or broker for any other real estate company or broker in Collier or Lee County, Florida in any manner. For a period of one (1) year after the Class B Member has owned an

---

[2] In its Amended Complaint, KOVA labeled its exhibits, including this one, in letter format (A,B,C, etc.). Instead of the alphabetical letters used by KOVA, the Court will cite each exhibit by the numerical number assigned to it by the Court's CM/ECF system. In its present motion, KOVA labeled its exhibits numerically, but some exhibits differ from the numerical number assigned to it by the Court's CM/ECF system (e.g., exhibit 12 in the CM/ECF system was labeled by KOVA as exhibit 11). Again, the Court will cite each exhibit by the numerical number assigned to it by the Court's CM/ECF system.

Interest in the Company such Class B Member agrees to be bound by Section 9 below.

. . .

**Section 9. <u>Non-Solicitation.</u>** Each Class B Member covenants and agrees that for as long as said Member owns a membership interest in the Company (or owns an interest in a legal entity or trust which owns a membership interest in the Company) and for a period of one (1) year thereafter, said Member shall not directly or indirectly do any of the following:

a. solicit business from, entice away from, accept work involving or otherwise interfere with the relationship of any client or prospective client (including any person or entity that was a client or prospective client of the Company at the time of execution of this Operating Agreement; or

b. solicit the services of, or hire, any individual who is employed the Company (or who was employed by the Company in the then most recent 1-year period), or who is retained by the Company as an independent contractor, or take any action that results, or might reasonably result, in any individual performing services for the Company to cease performing such services.

The activities described in this Section shall be prohibited regardless of whether undertaken by the Class B Member, or any of the Class B Member's agents or representatives, and regardless of whether performed for the Class B Member's own account or for the account of any other individual, partnership, firm, corporation or other business entity (other than the Company). If a Class B Member is ever in breach of any of the provisions of this Section, then any time periods applicable to such party as are set forth in this Section shall be extended by the length of time during which such breach existed.

(<u>Id.</u>, pp. 24-25.) The operating agreement also incorporates a document titled "NON-COMPETITION AND NON-SOLICITATION AGREEMENT" that in pertinent part reads as follows:

**1. <u>Non-Competition and Non-Solicitation.</u>** Sabin covenants and agrees that for so long he owns a membership interest in the Company (or owns an interest in a legal entity or trust which owns a membership interest in the Company), Sabin shall not directly or indirectly do any of the following:

a. work at or be employed by or have any direct or indirect ownership or profit-sharing interest in any real estate brokerage firm or company located or operating in within the Restricted Area (as defined herein); (ii) be affiliated in any manner with any other real estate brokerage firm or company located or operating within the Restricted Area (as defined herein); (iii) act, in its individual capacity, as a sales associate or broker for any other real estate company or broker within the Restricted Area (as defined herein); or (iv) manage, operate, join, control, participate in, be connected with (as an officer, employee, partner, member, shareholder, consultant, lender, investor or otherwise), enter into any agreement reflecting a business transaction with or without any interest (directly or indirectly) in any partnership, company, firm, corporation or any other business organization, person or entity that competes with the Company in the business for which it is engaged. For purposes of this subsection, "Restricted Area" shall mean Collier County and Lee County, Florida;

b. In addition, Sabin covenants and agrees that for so long he owns a membership interest in the Company (or owns an interest in a legal entity or trust which owns a membership interest in the Company), and for one (1) year thereafter, Sabin shall not directly or indirectly solicit business from, entice away from, accept work involving or otherwise interfere with the relationship of any client or prospective client (including any person or entity that was a client or prospective client of the Company as of the Effective Date of the Operating Agreement of the Company; or

c. solicit the services of, or hire, any individual who is employed the Company (or who was employed by the Company in the then most recent one (1) year period), or who is retained by the Company as an

independent contractor or consultant, or take any action that results, or might reasonably result, in any individual performing services for the Company to cease performing such services.

The activities described in this Section 1 shall be prohibited regardless of whether undertaken by Sabin, or any of her agents or representatives, and regardless of whether performed for Sabin own account or for the account of any other individual, partnership, firm, corporation or other business entity (other than the Company). If Sabin is ever in breach of any of the provisions of this Agreement, then any time periods applicable to such party as are set forth in this Agreement shall be extended by the length of time during which such breach existed.

**2. Enforcement of Agreement.** The Company shall be entitled to all rights and remedies available under Florida law to prevent, prohibit or otherwise cease Sabin's violation of the terms of this Agreement including, without limitation, the right to enforce the terms hereof by specific performance and injunction, and the right to seek any and all resulting damages. Sabin acknowledges and agrees that a claim for damages for breach of the provisions herein contained shall not preclude the Company from seeking injunctive or such other forms of relief as may be obtained in a court of law or equity, and that the Company, in lieu of or in addition to the remedy of damages, may seek injunctive relief prohibiting Sabin from breaching or continuing to breach the provisions of this Agreement. Sabin hereby acknowledges and warrants her experience and capabilities are such that she will be fully able to earn an adequate livelihood for himself or herself and his or her family if this Section should be specifically enforced by the Company.

(Id., pp. 40-41.)

## II.

KOVA previously filed two motions for temporary restraining order. (See Docs. ## 6, 24.) The first was denied due to non-compliance with the Federal Rules of Civil Procedure (FRCP) and the Local Rules for the Middle District of Florida (Local Rules).

(See Doc. #19.) The second was denied because KOVA's Complaint was a shotgun pleading and the operating agreement was missing from KOVA's papers. (See Doc. #26.) KOVA has since filed the operating agreement (see Doc. #30, Ex. 1) and an Amended Complaint (AC). (See Doc. #30.) This operative pleading contains eight counts: (1) breach of contract; (2) violation of the Defend Trade Secrets Act (DTSA); (3) violation of Florida's Uniform Trade Secrets Act (FUTSA); (4) misappropriation of confidential information; (5) breach of fiduciary duty; (6) tortious interference with advantageous business relationships; (7) declaratory judgment; and (8) injunctive relief.

KOVA now moves for a temporary restraining order and a preliminary injunction:

    i)    restraining and enjoining Sabin from directly or indirectly using, permitting to be used, disclosing, or transmitting for any purpose any of KOVA's confidential or trade secret information;

    ii)   restraining and enjoining Sabin from communicating with or otherwise soliciting, either directly or indirectly, or accepting business from, or otherwise interfering with any of KOVA's clients or prospective clients, or soliciting KOVA's employees, or agents, for one year; and

    iii)  requiring Sabin to return immediately to KOVA all originals, copies, and other reproductions, in any form whatsoever, or any and all documents of KOVA's, including but not limited to copies of any files accessed, copied, downloaded, deleted, opened, or otherwise modified by Sabin and (after preserving all materials in an appropriate manner for purposes of this litigation including metadata)

> to purge or destroy any computerized records Sabin
> has in his possession, custody, or control.

(Doc. #31, p. 25.)

### III.

The FRCP and the Local Rules authorize a court to issue a preliminary injunction under certain circumstances. See Fed. R. Civ. P. 65(a); M.D. Fla. R. 6.02. A preliminary injunction will be issued only if the movant demonstrates: "(1) he has a substantial likelihood of success on the merits, (2) he will suffer irreparable injury unless the injunction issues, (3) the injunction would not substantially harm the other litigant, and (4) if issued, the injunction would not be adverse to the public interest." Long v. Sec'y, Dep't of Corr., 924 F.3d 1171, 1176 (11th Cir. 2019). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." Vital Pharms., Inc. v. Alfieri, 23 F.4th 1282, 1291 (11th Cir. 2022)(quoting Forsyth Cnty. v. U.S. Army Corps of Eng'rs, 633 F.3d 1032, 1039 (11th Cir. 2011)). But a movant need only demonstrate a substantial likelihood of success on one of his claims—not all his claims—to secure a preliminary injunction. Alabama v. U.S. Army Corps of Eng'rs, 424 F.3d 1117, 1134 (11th Cir. 2005); Louis v. Meissner, 530 F. Supp. 924, 926 (S.D. Fla. 1981).Ultimately, "[t]he grant or denial of a preliminary injunction is a decision within the sound discretion

of the district court." <u>United States v. Lambert</u>, 695 F.2d 536, 539 (11th Cir. 1983).

The Court will consider KOVA's motion by evaluating its breach-of-contract claim. In Florida, "[t]he three elements of a breach-of-contract action are: (1) a valid contract; (2) a material breach; and (3) damages." <u>Rauch, Weaver, Norfleet, Kurtz & Co. v. AJP Pine Island Warehouses, Inc.</u>, 313 So. 3d 625, 630 (Fla. 4th DCA 2021)(citing <u>Friedman v. New York Life Ins. Co.</u>, 985 So. 2d 56, 58 (Fla. 4th DCA 2008)). The Court is "guided by [Fla. Stat. § 542.335], 'which contains a comprehensive framework for analyzing, evaluating and enforcing restrictive covenants contained in employment contracts.'" <u>Vital Pharms., Inc.</u>, 23 F.4th at 1291 (quoting <u>Proudfoot Consulting Co. v. Gordon</u>, 576 F.3d 1223, 1230-31 (11th Cir. 2009)). But that guidance is not absolute. After all, "[u]nder <u>Erie</u> and its progeny, 'federal courts sitting in diversity apply state substantive law and federal procedural law.'" <u>Garcia v. Chiquita Brands Int'l, Inc.</u>, 48 F.4th 1202, 1210 (11th Cir. 2022)(quoting <u>Gasperini v. Ctr. for Humanities, Inc.</u>, 518 U.S. 415, 427(1996)).

For our purposes, "[b]ecause we are interpreting Florida law, we look first for case precedent from Florida's highest court—the Florida Supreme Court." <u>SE Prop. Holdings, LLC v. Welch</u>, 65 F.4th 1335, 1342 (11th Cir. 2023)(citing <u>Winn-Dixie Stores, Inc. v. Dolgencorp, LLC</u>, 746 F.3d 1008, 1021 (11th Cir. 2014)). "Where

that court has not spoken, however, we must predict how the highest court would decide this case." Id. (quoting Turner v. Wells, 879 F.3d 1254, 1262 (11th Cir. 2018)). "In making this prediction, 'we are bound to adhere to the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.'" Id. (cleaned up)(quoting Winn-Dixie, 746 F.3d at 1021).

**IV.**

The Court first addresses the merits of a preliminary injunction before turning to the merits of Sabin's motion to amend.

**A. The preliminary injunction**

To determine whether a preliminary injunction is merited, the Court begins by analyzing whether KOVA's breach-of-contract claim has a substantial likelihood of success on the merits.

**1. KOVA's likelihood of success on the merits is high**

Sabin makes two applicable arguments challenging the propriety of an injunction. First, Sabin argues that the "plain language" of the restrictive covenants makes clear that "it applies only to those clients or perspective clients of Plaintiff which existed on August 5, 2016." (Doc. #36, pp. 3, 8.) Second, Sabin argues that because the Plaintiff has not named a specific client, he has failed to show a legitimate business interest in accordance with Fla. Stat. § 542.335. (See id., p. 9.) Both arguments are unpersuasive, as explained below.

### i. **The restrictive covenants unambiguously restrict Sabin from soliciting any of KOVA's current or prospective clients**

The Court first focuses on the "single provision" that, according to Sabin, "this case boils down to":

> **Section 9.** **Non-Solicitation.** Each Class B Member covenants and agrees that for as long as said Member owns a membership interest in the Company (or owns an interest in a legal entity or trust which owns a membership interest in the Company) and for a period of one (1) year thereafter, said Member shall not directly or indirectly do any of the following:
>
> > a. solicit business from, entice away from, accept work involving or otherwise interfere with the relationship of any client or prospective client (including any person or entity that was a client or prospective client of the Company at the time of execution of this Operating Agreement; or

(Id., p. 2)(quoting Doc. #31, Ex. 2, pp. 24-25.) Sabin argues this restrictive covenant is "limited to 'any person or entity that was a client or prospective client of the Company at the time of execution of this Operating Agreement.'" (Id., p. 8)(quoting Doc. #31, Ex. 2, p. 24.) KOVA interprets the non-solicitation clause to apply to all of its current and prospective clients, while Sabin interprets it to only apply to any prospective or actual client of KOVA's at the time the contract was executed. Sabin's position is consistent with KOVA's allegations (see Doc. #30, ¶ 93)(recounting that Sabin asserted at his resignation meeting "that his non-solicitation obligations were limited to clients who were clients of KOVA at the time the Operating Agreement was executed") but not with the plain reading of the contract.

"Florida law calls for a two-stage analysis" when construing restrictive covenants. (Doc. #36, p. 5)(quoting Winn-Dixie Stores, Inc., 746 F.3d at 1022.) "Courts first ask whether a restrictive covenant is ambiguous. And second, if it is, 'substantial ambiguity or doubt must be resolved against the person claiming the right to enforce the covenant.'" Winn-Dixie Stores, Inc., 746 F.3d at 1022(quoting Moore v. Stevens, 90 Fla. 879, 106 So. 901, 904 (1925)). Because the language is unambiguous, the Court need not reach the second stage of the analysis.[3]

"In Florida, ambiguity exists when a restrictive covenant 'is susceptible to two different interpretations, each one of which is reasonably inferred from [its] terms.'" Id. (alteration in original)(quoting Commercial Capital Res., LLC v. Giovannetti, 955 So.2d 1151, 1153 (Fla. 3d DCA 2007)). "When interpreting restrictive

---

[3] Even if the language was ambiguous, the second stage of the analysis seems to have been overturned by the Florida legislature with the enactment of Fla. Stat. § 542.335(1)(h), which reads:

> A court shall construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement. A court shall not employ any rule of contract construction that requires the court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract.

Id. The enactment of this section, the Eleventh Circuit has said, was an effort by the Florida legislature "to legislatively discard[] prior Florida decisions that invoked and applied such doctrines in restrictive covenant cases." Proudfoot Consulting Co. v. Gordon, 576 F.3d 1223, 1240 (11th Cir. 2009)(alteration in original)(quotations omitted).

covenants, the courts 'should give effect to the commonly understood meaning of the words of the pertinent provisions.'" Clark v. Bluewater Key RV Ownership Park Prop. Owners Ass'n, Inc., 226 So. 3d 276, 282 (Fla. 3d DCA 2017)(quoting Gem Estates Mobile Home Vill. Ass'n v. Bluhm, 885 So.2d 435, 437 (Fla. 2d DCA 2004)). In doing so, the Court "must consider the document as a whole, rather than attempting to isolate certain portions of it." Id. (quoting Lambert v. Berkley S. Condo. Ass'n, Inc., 680 So.2d 588, 590 (Fla. 4th DCA 1996)).

Sabin's interpretation of the clause is unreasonable because he equates the word 'including' to a word like 'only,' and in the process ignores the rest of the provision so as to rob the restrictive covenant of its intent. By its plain language, Sabin cannot "solicit business from, entice away from, accept work involving or otherwise interfere with the relationship of **any** client or prospective client (including any person or entity that was a client or prospective client of the Company at the time of execution of this Operating Agreement[)]." (Doc. #31, Ex. 2, p. 24)(emphasis added). 'Any' means "one or some indiscriminately of whatever kind." Any, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/any (last visited Sept. 20, 2023).[4] 'Include' means "[t]o contain as a part of

---

[4] Courts may look at popular and legal dictionaries to determine the ordinary meaning of a word. Spencer v. Specialty

something." Include, Black's Law Dictionary (11th ed. 2019). Further, "[t]he participle including typically indicates a partial list." Id. (emphasis in the original). Altogether, it follows that the non-solicitation clause applies to KOVA's current and prospective clients of whatever kind, and KOVA's clients at the time the agreement was executed are a part of that universe.

Sabin's attempt to construe the word 'including' as 'exclusively' or 'only' conflicts with its commonly understood meaning accepted by this Circuit and the Supreme Court. See Argosy Ltd. v. Hennigan, 404 F.2d 14, 20 (5th Cir. 1968)[5] ("The word 'includes' is usually a term of enlargement, and not of limitation." (citing United States v. Gertz, 249 F.2d 662, 666 (9th Cir. 1957))); Samantar v. Yousuf, 560 U.S. 305, 317 (2010)(agreeing that "the use of the word 'include' can signal that the list that follows is meant to be illustrative rather than exhaustive."); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Text 132-33 (2012) (explaining that "include does not ordinarily introduce an exhaustive list" but "introduces examples").

---

Foundry Prod. Inc., 953 F.3d 735, 740 (11th Cir. 2020).

[5] "All decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981, are binding precedent in the Eleventh Circuit." United States v. Rolle, 65 F.4th 1273, 1276 n.2 (11th Cir. 2023).

Sabin's position also conflicts with a basic concept of contract construction. The "surplusage canon obliges us, whenever possible, to disfavor an interpretation when that interpretation would render a 'clause, sentence, or word . . . superfluous, void, or insignificant.'" In Re Shek, 947 F.3d 770, 777 (11th Cir. 2020)(alteration in original)(quoting TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001)). Accepting "any client or prospective client (including any person or entity that was a client or prospective client of the Company at the time of execution of this Operating Agreement[)]" (Doc. #31, Ex. 2, p. 24), to mean "only any client or prospective client of Company at the time of execution of this Operating Agreement" would require many words, including 'any', to be ignored or be stripped of their effect. The surplusage canon forbids such undertaking. Instead, the canon "require[s] to give effect to 'every word, phrase, sentence, and part of the [contract], if possible, and words in a [contract] should not be construed as mere surplusage.'" Heart of Adoptions, Inc. v. J.A., 963 So. 2d 189, 198 (Fla. 2007)(quoting American Home Assur. Co. v. Plaza Materials Corp., 908 So.2d 360, 366 (Fla.2005)). Giving every word in the clause effect leads to the conclusion that the non-solicitation clause applies to any of KOVA's clients, including those that existed when the agreement was executed.

Sabin argues that it was "the intention of the parties" to limit the clients susceptible to the non-solicitation clause.

(Doc. #36, p. 8.) If the parties intended to limit non-solicitation of clients to only those clients in existence when the agreement was entered to, they could have formulated a contract reflecting that fact.   For example, the parties could have executed an agreement that read the clause was 'limited to' clients in existence at that time or 'solely' to current clients. Instead, the contract states that Sabin cannot solicit "any client or prospective client" of KOVA, "including" KOVA's clients that were KOVA's clients when the agreement was executed. (Doc. #31, Ex. 2, p. 24.) The parties' purposeful inclusion of the words 'any' followed by 'including' establishes their intent to provide an illustrative subset of KOVA's clients covered under the non-solicitation clause instead of an exhaustive listing.

The Court finds that the non-solicitation clause, read as a whole, unambiguously restricts Sabin from soliciting KOVA's clients (including those at the time the agreement was executed) from when the parties separated (August 4, 2023) until one year thereafter (August 4, 2024). Sabin's argument to the contrary is unpersuasive and unlikely to succeed.

### ii.  The restrictive covenants are valid

In Florida, "Section 542.335(1) permits 'enforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business.'" GFA Int'l, Inc.

v. Trillas, 327 So. 3d 872, 875 (Fla. 3d DCA 2021)(quoting Fla.
Stat. § 542.335(1)). The statute provides a non-exhaustive list of
"legitimate business interests" to include "[t]rade secrets,"[6]
"[v]aluable confidential business or professional information,"
"[s]ubstantial relationships with specific prospective or existing
customers, patients, or clients," and "client goodwill." Fla.
Stat. § 542.335(1)(b). In these situations, the statute also
provides that "any restraint 6 months or less in duration" is
reasonable in time, while "any restraint more than 2 years in
duration" is unreasonable. Id. § 542.335(1)(d)1. But ultimately,
"[w]hether a non-compete covenant is reasonable or overly broad is
a question of fact for the trial court." Whitby v. Infinity Radio
Inc., 951 So.2d 890, 897 (Fla. 4th DCA 2007)

    Sabin argues that there is no demonstration of substantial
relationships with specific clients as required by Fla. Stat. §
542.335(1)(b) because KOVA does not name any clients. (Doc. #36,
p. 9)(citing Vital Pharms., Inc. v. Alfieri, 23 F.4th 1282, 1291

---

    [6] Trade secrets is defined by the statute as:

information, including a formula, pattern, compilation, program,
device, method, technique, or process that:

    (a) Derives independent economic value, actual or potential,
    from not being generally known to, and not being readily
    ascertainable by proper means by, other persons who can obtain
    economic value from its disclosure or use; and

    (b) Is the subject of efforts that are reasonable under the
    circumstances to maintain its secrecy.

Fla. Stat. § 688.002(4).

(11th Cir. 2022)). KOVA has since named the clients (see Doc. #38, Ex. 1) so the argument is now unpersuasive. In any event, it is apparent that KOVA's interests in enforcing a non-solicitation of clients clause and protecting its confidential business information fall squarely within a reasonable line of business recognized by Florida statute. See Id. § 542.335(1)(b).

To satisfy the remaining two conditions, KOVA posits that "the restrictive covenants contained in the Operating Agreement are reasonable in time—one year—and area—two counties in Florida." (Doc. #31, p. 11.) The limitation on operating another real estate brokerage firm is limited to as "long as a Class B Member owns an Interest in [Kova]," while the non-solicitation of clients clause expires "one (1) year thereafter . . . ." (Doc. #31, Ex. 2, p. 24.)

A sister court previously held that eighteen months is a reasonable time and that limiting the covenants to the states where that party conducted business was a reasonable area. See Lincare, Inc. v. Tinklenberg, No. 8:20-CV-1002-T-02AAS, 2020 WL 10354020, at *4 (M.D. Fla. June 26, 2020). The Court finds that twelve months is reasonable. Additionally, a restrictive covenant limited to two counties in one state is reasonable. But while the Court agrees with KOVA that the operating agreement limits where Sabin can operate a real estate brokerage firm to Collier and Lee Counties,

Florida, the non-solicitation of clients clause appears silent as to any geographical limitation.

This silence, however, can easily be cured because "Section 542.335 commands courts to modify, or blue pencil, a non-competition agreement that is 'overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest,' instructing courts to 'grant only the relief reasonably necessary to protect such interest.'" White v. Mederi Caretenders Visiting Servs. of Se. Fla., LLC, 226 So. 3d 774, 785 (Fla. 2017)(quoting Fla. Stat. § 542.335(1)(c)). The Court will therefore blue pencil the non-solicitation clause to limit it to only Collier and Lee Counties, Florida. Sabin will not be permitted to solicit any of KOVA's current or prospective clients that seek to or currently buy, sell, lease, or rent in Collier or Lee Counties, Florida. This modification reflects KOVA's interpretation of the restrictive covenant and protects KOVA's legitimate business interest, as Florida's legislature intended. With this change, the restrictive covenants are now valid and enforceable as they are reasonable as to time, area, and line of business.

Having determined the restrictive covenants are valid, the Court turns to the next element in a breach-of-contract claim—breach. The record establishes solicitations by Sabin in violation of the agreement. A declaration under penalty of perjury from Kim

Gaglia (Gaglia), a manager at KOVA, attests that "[s]ince Sabin resigned, several KOVA clients have confirmed that Sabin has continued to solicit business from them." (Doc. #31, Ex. 3, ¶ 10.) As a specific example, Gaglia recounts how she contacted Peacock Properties of Naples, LLC only to be told "that Sabin had instructed the client to send Sabin a letter stating that they wanted Sabin to remain as its listing agent, and that they had followed these instructions." (Doc. #38, Ex. 1, ¶ 5.) Similarly, Anthony L. Emma, Jr. (Emma), another manager at Kova, declared under penalty of perjury that "several" KOVA clients have "informed [him] or another member of KOVA senior leadership that Sabin has reached out to them directly about his departure from KOVA, and that he will be operating his own brokerage." (Doc. #31, Ex. 1, ¶ 50.)

Florida courts have recognized that "'[t]he right to prohibit the direct solicitation of existing customers' is a legitimate business interest, and a covenant not to compete which includes a non-solicitation clause is breached when a former employee directly solicits customers of his former employer." Atomic Tattoos, LLC v. Morgan, 45 So.3d 63, 65 (Fla. 2d DCA 2010)(quoting Dyer v. Pioneer Concepts, Inc., 667 So.2d 961, 964 (Fla. 2d DCA 1996)). Because the record establishes that Sabin has directly solicited KOVA's customers upon his departure from the firm, KOVA has a high likelihood of proving a breach has occurred and of

succeeding on the merits. See Walsh v. Paw Trucking, Inc., 942 So. 2d 446, 448 (Fla. 2d DCA 2006)("Evidence that an enforceable covenant not to compete was breached will support a trial court's finding of the likelihood of success on the merits.).

## 2. There is a substantial likelihood of irreparable injury

"[E]ven if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000). "An injury is 'irreparable' only if it cannot be undone through monetary remedies." Ferrero v. Associated Materials Inc., 923 F.2d 1441, 1449 (11th Cir. 1991). Irreparable injury must be at least likely—not just possible—in the absence of an injunction. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008); see also Siegel, 234 F.3d at 1176 ("[T]he asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" (quoting Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir.1990))).

Irreparable injuries have been established here as to the solicitation of clients and the taking of confidential business information.[7] "Section 542.335(1)(j) [of the Florida statutes]

---

[7] Sabin has not denied the existence of the allegedly taken documents. To the contrary, he has indicated they are sequestered until the litigation is resolved. (See Doc. #4, Ex. 2, ¶ 10.)

confers a presumption of irreparable injury where there is a violation of a valid restrictive covenant." <u>Joseph Spine, P.A. v. Moulton</u>, 346 So. 3d 154, 158 (Fla. 2d DCA 2022).[8] "[T]o benefit from the presumption of irreparable injury, the party seeking to enforce a covenant not to compete must show that the covenant protects a legitimate business interest as defined by section 542.335(1)(b) and that the covenant was violated." <u>Walsh</u>, 942 So. 2d at 448. The presumption of irreparable injury applies here since the Court has found that the restrictive covenants protect KOVA's legitimate business interests and that the covenants have been violated.

Apart from the presumption, it is well-established in this Circuit that "the loss of customers and goodwill is an irreparable injury." <u>Jysk Bed'N Linen v. Dutta-Roy</u>, 810 F.3d 767, 780 (11th Cir. 2015)(quoting <u>BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC</u>, 425 F.3d 964, 970 (11th Cir.2005)); <u>Ferrero</u>, 923 F.2d at 1449; <u>see also</u> <u>Basicomputer Corp. v. Walker</u>, 973 F.2d 507, 512 (6th Cir. 1992) ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute."). The record shows Sabin has already poached at least one of KOVA's clients and

---

[8] Federal courts sitting in diversity in Florida can apply this presumption in preliminary injunction motions. <u>TransUnion Risk & Alternative Data Sols., Inc. v. MacLachlan</u>, 625 F. App'x 403, 406 (11th Cir. 2015)(per curiam).

solicited many more. KOVA has established it is suffering an irreparable injury, satisfying this requisite for a preliminary injunction.

### 3. No substantial harm to Sabin

In analyzing any potential harm to the non-movant, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter, 555 U.S. 7 at 24 (quoting Amoco Production Co. v. Gambell, 480 U.S. 531, 542 (1987)). In Larweth v. Magellan Health, Inc., the Eleventh Circuit affirmed a district court's finding that the balancing of harms tipped in the movant's favor when the record showed that the opposing party "us[ed] the contacts and information [he] gained during his employment with [the movant] to obtain contracts with [movant]'s clients." Id., 841 F. App'x 146, 159 (11th Cir. 2021).

Here, the record shows that KOVA has suffered an irreparable injury and the balance of interests between the parties tips in KOVA's favor. Sabin's income will undoubtedly be negatively affected by the injunction, as his pool of potential clients will be limited. But this harm does not outweigh KOVA's harm, since Sabin will still be able to solicit other clients — just not KOVA's clients. See Tinklenberg, 2020 WL 10354020 at *6 (finding enforcement of non-compete clause to outweigh the limitation on non-movant's earnings potential); New Horizons Computer Learning

<u>Centers, Inc. v. Silicon Valley Training Partners, Inc.</u>, No. 2:02CV459FTM29SPC, 2003 WL 23654790, at *7 (M.D. Fla. Nov. 12, 2003)(same); <u>Bos. Sci. Corp. v. Ruiz</u>, No. 05-21270-CIV, 2005 WL 8154995, at *6 (S.D. Fla. May 17, 2005)(same).

### 4. Public Interest favors issuance of a preliminary injunction

For two reasons, the public interest is best served if an injunction is issued. First, the Eleventh Circuit has recognized that "'the public interest calls for the[ ] enforcement' of valid restrictive covenants." <u>Larweth</u>, 841 F. App'x at 159)(alteration in original)(quoting <u>N.I.S. Corp. v. Swindle</u>, 724 F.2d 707, 710 (8th Cir. 1984)). Likewise, "[p]ublic policy in Florida favors enforcement of reasonable covenants not to compete." <u>Quirch Foods LLC v. Broce</u>, 314 So. 3d 327, 343 (Fla. 3d DCA 2020)(quoting <u>Winmark Corp. v. Brenoby Sports, Inc.</u>, 32 F. Supp. 3d 1206, 1224 (S.D. Fla. 2014). Having already determined that the restrictive covenants here appear valid, it is in the public's interest to enforce them.

Second, Fla. Stat. 542.335(1)(j) instructs courts to "enforce a restrictive covenant by any appropriate and effective remedy, including, but not limited to, temporary and permanent injunctions." <u>Id.</u> It can be said then, that "[t]his balancing of the public interest has already been performed by the [Florida] legislature when it presumed that injunctive relief is [an]

appropriate remedy for a violation of this type of covenant."
Ferrero, 923 F.2d at 1449. In any event, the Court finds that the
public interest favors a preliminary injunction.

### 5. Miscellaneous terms of the preliminary injunction

A preliminary injunction will be issued in a separate document
setting forth its specific terms. See Fed. R. Civ. P. 65(d)(1)(B).
Such a preliminary injunction may not be viable for a period longer
than the expiration of the restrictive covenants. See Larweth, 841
F. App'x at 159-60. Here, the agreement between Sabin and KOVA
provided that the restrictive covenants would last for one year
following Sabin's separation, which was on August 4, 2023. The
preliminary injunction will thus expire on August 4, 2024, absent
further order from this Court.

Rule 65(c) also provides that "[t]he court may issue a
preliminary injunction . . . only if the movant gives security in
an amount that the court considers proper to pay the costs and
damages sustained by any party found to have been wrongfully
enjoined or restrained." Fed. R. Civ. P. 65(c). "[I]t it is well-
established that 'the amount of security required by the rule is
a matter within the discretion of the trial court . . . [, and]
the court may elect to require no security at all." BellSouth
Telecommunications, Inc., 425 F.3d at 971 (alteration in original)
(quoting City of Atlanta v. Metro. Atlanta Rapid Transit Auth.,
636 F.2d 1084, 1094 (5th Cir. Unit B 1981)).

KOVA argues that "no bond should be required" because of its "high likelihood of success on the merits" and "minimum potential harm to the defendant." (Doc. #31, p. 24-25.) Sabin counters that "any entry of an injunction should be premised upon the posting of a bond no less than $150,000." (Doc. #36, p. 18.) The Court rejects both arguments.  The Court considers Tinklenberg, 2020 WL 10354020 (M.D. Fla. June 26, 2020), to offer more apt guidance. There the court found the defendant's annual base salary of two-hundred-fifty thousand dollars ($250,000.00) to be an appropriate basis upon which to set bond. See id., 2020 WL 10354020 at *7; see also Lincare, Inc. v. Markovic, No. 8:22-CV-918-MSS-TGW, 2023 WL 2329207, at *2 (M.D. Fla. Jan. 11, 2023)(setting bond at one year of the defendant's salary). Here, Sabin asserted in one of his emails that his "normal services" earned him "north of $90k a year . . . ." (Doc. #31, Ex. 9., p. 2.) This assertion has not been disputed by KOVA. The Court is satisfied with that amount as an appropriate bond. KOVA must post a ninety-thousand-dollar ($90,000.00) cash or surety bond to trigger the preliminary injunction.

### B. Sabin's motion to amend

At the eleventh hour, Sabin has filed a motion to amend or supplement his response in light of KOVA's reply. Sabin argues that his requested relief is warranted since KOVA's reply includes new declarations and he "should be provided the opportunity to

amend his response in opposition to both address the legal
sufficiency of the newly filed declarations/documents and rebut
the specific allegations by counter declaration(s)/documentation."
(Doc. #39, ¶ 6.) KOVA counters that Sabin's motion is "essentially
[requesting] a sur-reply [that] would serve as an unnecessary
'second bite at the apple' for Defendant and would only delay the
necessary immediate relief KOVA seeks." (Doc. #41, p. 2.) Because
the Court agrees with KOVA, Sabin's motion will be construed as a
motion for leave to file a sur-reply and is denied.

A district court's decision to permit the filing of a sur-
reply is purely discretionary and should generally only be allowed
when "a valid reason for such additional briefing exists, such as
where the movant raises new arguments in its reply brief." Fedrick
v. Mercedes-Benz USA, LLC, 366 F.Supp.2d 1190, 1197 (N.D. Ga.
2005). "However, there exists a subtle yet noteworthy distinction
between 'new arguments and evidence, on the one hand, and rebuttal
arguments and evidence, on the other.' While raising new arguments
on reply is generally inappropriate, reply evidence 'may contain
facts not previously mentioned in the opening brief, as long as
the facts rebut elements of the opposition memorandum and do not
raise wholly new factual issues.'" Lage v. Ocwen Loan Servicing
LLC, 145 F. Supp. 3d 1172, 1181 (S.D. Fla. 2015), aff'd, 839 F.3d
1003 (11th Cir. 2016) (quoting Giglio Sub s.n.c. v. Carnival Corp.,

No. 12-21680-CIV, 2012 WL 4477504, at *2 (S.D.Fla. Sept. 26, 2012) aff'd, 523 Fed.Appx. 651 (11th Cir.2013)).

Leave to file a sur-reply is denied because KOVA's Reply appropriately offers rebuttal arguments and evidence, which Sabin previously had ample opportunity to contest, and as a result no valid reason exists for additional briefing that would further delay consideration of the relief KOVA seeks. From KOVA's very first motion for temporary restraining order (Doc. #6) over a month ago, declarations have been attached alleging Sabin contacted a KOVA client, instructed the client to draft a letter stating they wanted Sabin to remain as their agent, and the client did so. (Doc. #6, Ex. 1, ¶¶ 43-44.) Sabin never disputed those factual allegations in his Response in Opposition (see Doc. #36) or in any other papers. The Court now only relies on KOVA's Reply (and its accompanying declarations) to the extent the documents allege the same facts, but now identify the KOVA client as Peacock Properties of Naples, LLC. (See Doc. #38, Ex. 1, ¶¶ 4-5.)

KOVA offers this declaration as rebuttal evidence to Sabin's opposition papers arguing that KOVA must name the affected clients. (See Doc. #36, p. 9.) Thus, KOVA's Reply is permissible and does not entitle Sabin to a sur-reply. See Lage, 145 F. Supp. 3d at 1181. As Sabin concedes, his argument is otherwise moot since the Court does not consider KOVA's reply further. (See Doc. #39, p. 4 n. 4)("Defendant recognizes that the relief requested herein would

be mooted in the event the Court declines to consider the documents filed by Plaintiff on September 26, 2023.").

Lastly, Sabin argues that he should be afforded a sur-reply "to both address the legal sufficiency of the newly filed declarations/documents and rebut the specific allegations by counter declaration(s)/documentation." (Doc. #39, ¶ 6.) As illustrated above, the facts asserted in the declarations are not new. The declaration in KOVA's Reply which is considered by the Court is almost a verbatim replica of the original declaration offered by KOVA in this present motion. (Compare Doc. #38, Ex. 1, with Doc. #31, Ex. 3.) They are declarations offered by the same person, in the same format, and with largely the same pertinent language except that "client" was replaced with "Peacock Properties of Naples, LLC." Id. Sabin has had ample opportunity to contest the alleged facts and attack the legal sufficiency of the declarations. He opted not to do so in his nineteen-page response in opposition or otherwise.  The Court declines to allow him to do so now.

Accordingly, it is hereby

**ORDERED:**

1. Defendant's Motion for Leave to Amend Response to Motion for Preliminary Injunction (Doc. #39) is **DENIED.**

2. Plaintiff's Third Motion for Temporary Restraining Order and First Motion for a Preliminary Injunction (Doc. #31)

is **DENIED AS MOOT** as to the Temporary Restraining Order and otherwise **GRANTED** as to the Preliminary Injunction.

3. As will be set forth in a separate Preliminary Injunction, Defendant Todd Sabin, and all officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Defendant within the meaning of Federal Rule of Civil Procedure 65(c)(2), and who receive proper notice of the preliminary injunction, are hereby:

    a. ordered, under penalty of contempt, to deliver to KOVA all sequestered documents and any other documents or files taken or emitted from KOVA's office from May 11, 2023 to August 4, 2023 be they originals, copies, or any other reproductions, in any form whatsoever without delay once KOVA posts bond.

    b. restrained and enjoined, under penalty of contempt, from the following from the time the bond is posted:

        i. directly or indirectly using, permitting to be used, disclosing, or transmitting for any purpose any of KOVA's confidential or trade secret information;

        ii. communicating with or otherwise soliciting, either directly or indirectly, or accepting business from, or otherwise interfering with any

- 30 -

of KOVA's current clients or prospective clients or tenants listed in KOVA's forms or documents, or soliciting KOVA's employees, or agents, in Collier or Lee County, Florida.

4. Plaintiff shall post a ninety-thousand-dollar ($90,000.00) cash or surety bond with the Clerk of the Court.

5. The injunction shall continue in force and effect until August 4, 2024 absent further order from the Court.

**DONE and ORDERED** at Fort Myers, Florida, this __4th__ day of October, 2023.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record