UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KOVA COMMERCIAL OF NAPLES,
LLC,

        Plaintiff,

v.                      Case No: 2:23-cv-614-JES-KCD

TODD SABIN,

        Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on review of Todd Sabin's (Sabin or Defendant) Motion to Dismiss (Doc. #50) and Motion to Strike. (Doc. #67.) KOVA Commercial of Naples, LLC (KOVA or Plaintiff) filed Responses in Opposition. (Docs. ##63, 68.) For the reasons set forth below, Sabin's Motion to Dismiss is granted in part and denied in part, while his Motion to Strike is denied.

### I.

KOVA's First Amended Complaint (FAC)(Doc. #30), the operative pleading, makes the following factual allegations:

KOVA is a commercial real estate brokerage firm that represents clients in buying, selling, leasing, and renting non-residential properties, and operates primarily in Charlotte, Lee, and Collier Counties, Florida. On or about August 5, 2016, Sabin became KOVA's Managing/Qualifying Broker after executing an

Operating Agreement (OA) and a Non-Competition and Non-Solicitation Agreement (NCNSA) with KOVA. The OA identified Sabin as a "Class B Member", gave him a forty-five percent ownership interest in the firm, and set forth certain restrictive covenants. As a Managing/Qualifying Broker, Sabin's responsibilities included developing KOVA's workforce and meeting revenue goals. Sabin gained access to documents concerning KOVA's finances, sales, strategy, actual and prospective client lists, referral sources, and more.

As time passed, the relationship soured. The FAC recounts various alleged misdeeds by Sabin, culminating in his August 4, 2023 resignation. During his resignation meeting with KOVA, Sabin stated that he planned to operate his own brokerage firm and to begin competing with KOVA "starting tomorrow."

After the meeting, KOVA uncovered several other misdeeds by Sabin, including: (1) Defendant had operated his own real estate brokerage firm, "Todd T. Sabin, P.A." since 2005, and registered as a Qualifying Broker for that firm in or around April 2017; (2) upon resigning, Defendant removed and took with him all the documents in his office; (3) Defendant had been sending documents from his firm-issued email account to external email addresses for months prior to his resignation, including a KOVA employee's employment agreement, client contact information, client financial information, a client's strategic investment and development plan,

KOVA's year-end financials, management forms, lease summaries, tenant leases, rent rolls, tenant identities, and tenant contact information; and (4) Defendant contacted multiple KOVA clients upon his departure from the firm, including one from whom Defendant obtained a letter stating the client's desire to keep Defendant as their agent.

The FAC contains eight counts: (1) breach of contract; (2) violation of the Defend Trade Secrets Act (DTSA); (3) violation of Florida's Uniform Trade Secrets Act (FUTSA); (4) misappropriation of confidential information; (5) breach of fiduciary duty; (6) tortious interference with advantageous business relationships; (7) declaratory judgment; and (8) injunctive relief.

Sabin moves to dismiss the FAC, arguing it is a shotgun pleading and raising separate additional arguments as to each count. KOVA's Response in Opposition addresses each argument except those relating to Counts Four and Eight, which KOVA agrees to voluntarily dismiss without prejudice. (Doc. #63, p. 20 n.24.)

**II.**

Sabin asserts that the breach of contract claim in Count I must be arbitrated pursuant to "a mandatory arbitration clause" in the NCNSA. (Doc. #50, pp. 6, 9.) This provision in the NCNSA states:

> Any dispute or controversy arising under or in connection with this Agreement that cannot be mutually resolved by the parties hereto shall be settled

exclusively by arbitration in Naples, Florida before one arbitrator of exemplary qualifications and stature who shall be selected jointly by Company and Individual, or, if Company and Individual cannot agree on a selection, the arbitrator shall be selected by the American Arbitration Association (provided that any arbitrator selected by the American Arbitration Association shall not, without the consent of the parties hereto, be affiliated with Company, Individual or any of their respected affiliates). Judgment may be entered on the arbitrator's award in any court having jurisdiction. The parties hereby agree that the arbitrators shall be empowered to enter an equitable decree mandating specific enforcement of the terms of this Agreement. The expense incurred as a result of such arbitration, including legal fees and out-of pocket expenses, shall be borne by the non- prevailing party.

(Doc. #30-1, p. 42.)  Sabin's argument as to Count I will be construed as a motion to compel arbitration.

KOVA opposes arbitration, arguing that its breach of contract claim in Count I is based solely on the OA, which is a separate contract and does not contain an arbitration clause.  KOVA argues that "[t]he Parties intended to, and did, enter into two separate agreements," that Count I "asserts claims only under the OA," and therefore "Sabin cannot enforce the arbitrability of claims under the NCNSA." (Doc. #63, pp. 5-6.)

**A. The Federal Arbitration Act**

The Federal Arbitration Act ("FAA") recognizes that a written agreement in a "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at

4

law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. A district court may only compel arbitration, however, of "those disputes . . . that the parties have agreed to submit" to arbitration. Granite Rock Co. v. Int'l Brotherhood of Teamsters, 561 U.S. 287, 302 (2010) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995)). Generally, courts decide threshold issues involving whether the parties agreed to arbitrate, including questions regarding the enforceability, scope, or applicability of the arbitration agreement. Henry Schein, Inc. v. Archer and White Sales, Inc., 139 S.Ct. 524 (2019); Attix v Carrington Mortgage Services, LLC, 35 F.4th 1284, 1295 (11th Cir. 2022); Nutraceuticals, LLC v. Cyanotech Corp., 769 F.3d 1308, 1311 (11th Cir. 2014). Whether an agreement to arbitrate exists is governed by the "ordinary state-law principles that govern the formation of contracts." Dye v. Tamko Bldg. Prod., Inc., 908 F.3d 675, 680 n.5 (11th Cir. 2018) (quoting Bazemore v. Jefferson Cap. Sys., LLC, 827 F.3d 1325, 1329 (11th Cir. 2016)). Thus, "[f]ederal law[, through the FAA,] establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of arbitration agreements." Employers Ins. of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir. 2001).

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."

<u>Green Tree Fin. Corp.-Alabama v. Randolph</u>, 531 U.S. 79, 91 (2000).

Procedurally, the Eleventh Circuit has instructed:

> When, as in this case, a party moves a district court to compel arbitration under the FAA, the court must first determine whether "the making of the agreement for arbitration or the failure to comply therewith is . . . in issue." 9 U.S.C. § 4. If, under a "summary judgment-like standard," the district court concludes that there "is no genuine dispute as to any material fact concerning the formation of such an agreement," it "may conclude as a matter of law that [the] parties did or did not enter into an arbitration agreement." <u>Bazemore</u>, 827 F.3d at 1333 (citation and quotation marks omitted). If, on the other hand, the making of the agreement is in issue, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

<u>Burch v. P.J. Cheese, Inc.</u>, 861 F.3d 1338, 1346 (11th Cir. 2017).

**B. Agreement to Arbitrate**

KOVA made plain in the FAC that it was "assert[ing] claims in this action only under the O[A]." (Doc. #30, p. 5 n.1.)  As Sabin counters, however, "[t]he plain face of the documents reflect that they are part of the same agreement . . . ." (Doc. #50, p. 7.)

The Florida Supreme Court has stated that a court "should consider the whole transaction in its entirety and look at each instrument in view of the other, and thus we will be aided in the construction and interpretation of the instruments." <u>Thompson v. Shell Petroleum Corp.</u>, 178 So. 413, 415 (Fla. 1938).  Thus, courts must "give effect to the intent of the parties in accord with reason and probability as gleaned from the whole agreement and its

purpose." _Arthur Rutenberg Corp. v. Pasin_, 506 So.2d 33, 34 (Fla. 4th DCA 1987). The Court concludes that the OA and the NCNSA together make up the parties' whole agreement under both Florida's contemporaneous instrument rule and its incorporation by reference doctrine.

**(1)  Contemporaneous Instrument Rule**

"Under Florida's 'contemporaneous instrument rule,' two separately executed documents may be 'construed together as a single contract' when the documents were 'executed by the same parties, at or near the same time, and concerning the same subject matter.'" _MSP Recovery Claims, Series LLC v. QBE Holdings, Inc._, 965 F.3d 1210, 1218 (11th Cir. 2020) (quoting _Life Care Ponte Vedra, Inc. v. H.K. Wu_, 162 So. 3d 188, 190 n.2 (Fla. 5th DCA 2015)). "[A] complete contract may be gathered from [multiple documents] between the parties relating to the subject-matter of the contract, and so connected with each other that they may be fairly said to constitute one paper." _Webster Lumber Co. v. Lincoln_, 115 So. 498, 502 (Fla. 1927) (collecting cases). "[T]he intention of the parties is the governing principle," and a court "look[s] to the terms of the [documents] to determine whether [the parties] intended to make one contract or two separate contracts." _In re Gardinier, Inc._, 831 F.2d 974, 976 (11th Cir. 1987) (applying Florida law).

KOVA admits that "[t]he OA and the NCNSA were executed on the same day, by the same parties, with . . . the [same] common purpose . . . ." (Doc. #63, p. 6.) The OA and the NCNSA both contain restrictive employment covenants. The OA contains two sections titled "Limitations Engaging in Other Businesses" and "Non-Solicitation" which set forth, as KOVA describes, "restrictive covenants [that] are similar" to those found in the NCNSA. (Doc. #63, p. 6.) KOVA is correct that the documents are not "identical," and contain some language which may be superfluous or even conflicting. This does not, however, prevent the agreements from being construed together, as KOVA argues. (Id. at pp. 6-7.) Rather, Florida's contract interpretation principles would be applied so that "[e]very provision in [the] contract [is] given meaning and effect and apparent inconsistencies reconciled if possible." Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938, 941 (Fla. 1979). Because the two documents were executed by the same parties, on the same date, concerning the same subject matter, the Court finds the parties intended they be construed as one single agreement.

**(2)  Incorporation By Reference Doctrine**

The two documents are also construed as one agreement under Florida's incorporation by reference doctrine. "[W]here a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be

interpreted as part of the writing." U.S. Rubber Prod. v. Clark, 200 So. 385, 388 (Fla. 1941). "Incorporation by reference is a recognized method of making one document of any kind become a part of another separate document without actually copying it at length in the other." Avatar Properties, Inc. v. Greetham, 27 So. 3d 764, 766 (Fla. 2nd DCA 2010) (quoting State v. Wade, 544 So. 2d 1028, 1030 (Fla. 2d DCA 1989)). No specific words or phrases are required. Rather, "[i]t is sufficient if the general language . . . reveals an intent to be bound by" the other document. Jenkins v. Eckerd Corp., 913 So. 2d 43, 51 (Fla. 1st DCA 2005) (quoting Management Computer Controls, Inc. v. Charles Perry Construction, Inc., 743 So. 2d 627, 631 (Fla. 1st DCA 1999)).

The Court finds the NCNSA and the OA were intended by the parties to be construed as one agreement under Florida's incorporation by reference doctrine. The NCNSA specifically refers to the OA. The words "Operating Agreement" appear on the bottom left-hand corner of every single page of the NCNSA, just as they do in the OA. (Compare Doc. #30-1, pp. 2-39, with Doc. #30-1, pp. 40-43.) The NCNSA's page numeration is a continuation of the OA's page numeration. (See id.) The NCNSA states that "contemporaneously with the execution of this Agreement, Sabin [was] being issued Units in the Company as set forth in the O[A]. . . ." (Doc. #30-1, p. 40.) The NCNSA also states the parties

"enter[ed] into [the NCNSA]" as "additional consideration and as additional inducement" for the OA. (Id.)

### C. Scope of Arbitration Agreement

Since the NCNSA is part of the contract, its arbitration clause is applicable.  The issue becomes whether the breach of contract claim in Count I falls within this arbitration clause.

Among other things, Count I of the FAC alleges Sabin breached the contract by "performing real estate brokerage work as an independent broker" while a member of KOVA and "soliciting current KOVA clients" after his immediate departure from KOVA,. (Doc. #30, pp. 25-26.)  The NCNSA's arbitration clause states that arbitration is required for "[a]ny dispute or controversy arising under or in connection this this Agreement . . . ." (Doc. #30-1, p. 42.)  The claim in Count I easily falls within this provision.

While Sabin is correct that arbitration is required for Count I, he is incorrect in suggesting Count I should be dismissed with prejudice. (See Doc. #50, p. 10.) A dismissal with prejudice is a judgment on the merits, Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1501 (11th Cir. 1990)("[D]ismissal of a complaint with prejudice satisfies the requirement that there be a final judgment on the merits."), which is exactly what the Court is not doing with respect to Count I. Instead, Count I will be stayed as the other claims proceed:

Pursuant to Section 3 of the FAA, a district court shall stay a pending suit "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration" under a valid arbitration agreement. For arbitrable issues, the language of Section 3 indicates that the stay is mandatory. When confronted with litigants advancing both arbitrable and nonarbitrable claims, however, courts have discretion to stay nonarbitrable claims. In this instance, courts generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation.

Klay v. All Defendants, 389 F.3d 1191, 1204 (11th Cir. 2004)(internal citations omitted).

### III.

Sabin asserts that every other count in the FAC must, for various reasons, be dismissed pursuant to Rule 12(b)(6). After setting out the standard of review, the Court addresses each of his arguments.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. See also Phx. Entm't Partners, LLC v. Casey Rd. Food & Bev., LLC, 728 F. App'x 910, 912 (11th Cir.

2018).   This   requires   "more   than   an   unadorned,   the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzaín, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations   that   are   merely   consistent   with   a   defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations   omitted).   Thus,   the   Court   engages   in   a   two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**A. Shotgun Pleading**

Sabin argues that certain paragraphs in the FAC result in a shotgun pleading because they "are replete with conclusory, vague, and immaterial facts not obviously connected to any particular

cause of action." (Doc. #50, p. 3)(quoting <u>LaQuinta-Wallace v.</u>
<u>Forman</u>, 23-CV-61030-RAR, 2023 WL 4888337, at *1 (S.D. Fla. July
31, 2023)). Sabin invokes only the second of the four types of
shotgun pleadings identified by the Eleventh Circuit. <u>See</u> <u>Barmapov</u>
<u>v. Amuial</u>, 986 F.3d 1321, 1324-25 (11th Cir. 2021)(citing <u>Weiland</u>
<u>v. Palm Beach Cnty. Sheriff's Off.</u>, 792 F.3d 1313, 1321-23 (11th
Cir. 2015)). "The unifying characteristic of all types of shotgun
pleadings is that they fail to one degree or another, and in one
way or another, to give the defendants adequate notice of the
claims against them and the grounds upon which each claim rests."
<u>Weiland</u>, 792 F.3d at 1323.

The FAC does not fall into the second type of shotgun
pleading. For example, paragraphs 26-38 are relevant details
connected to KOVA's breach of contract claim. Paragraphs 47-51,
detailing the measures KOVA takes to safeguard information, are
relevant to at least KOVA's FUTSA claim. <u>See</u> <u>Am. Red Cross v. Palm</u>
<u>Beach Blood Bank, Inc.</u>, 143 F.3d 1407, 1410 (11th Cir. 1998)("In
a trade secret action, the plaintiff bears the burden of
demonstrating both that the specific information it seeks to
protect is secret and that it has taken reasonable steps to protect
this secrecy."). This portion of Sabin's motion is denied.

**B. Count II: Federal Defend Trade Secrets Act (DTSA)**

Count II of the FAC asserts a DTSA claim against Sabin. (Doc.
#30, ¶¶ 133-47.) The DTSA provides a federal civil cause of action

for "[a]n owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).  "To plausibly allege a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836, the plaintiff must adequately plead three elements: (1) the plaintiff owns a valid trade secret; (2) the trade secret relates to a product or service used in, or intended for use in, interstate commerce; and (3) the defendant misappropriated that trade secret." It Works Mktg., Inc. v. Melaleuca, Inc., No. 820CV1743TKKMTGW, 2021 WL 1650266, at *7 (M.D. Fla. Apr. 27, 2021)(citing 11th Cir. Pattern Jury. Instr. Civ. 11.1.).

Sabin's argument goes only to the interstate commerce element. The FAC alleges: "This confidential and trade secret information relates, among other things, to products or services that are used in, or intended for use in, interstate commerce." (Doc. #30, ¶ 135.)  Sabin argues that, by itself, this language does not sufficiently plead the required interstate commerce element.  KOVA responds that the language, when coupled with the FAC's assertion that Sabin misappropriated customer lists, business information, financial information, etc., is sufficient. (Doc. #63, p. 9.)

KOVA states "it only needs to 'plausibly show a trade secret was involved and to give the defendant notice of the material it

claims and constituted a trade secret.'" (Id. at p. 10)(quoting
DynCorp Int'l v. AAR Airlift Grp., Inc., 664 F. App'x 844, 848
(11th Cir. 2016)). But DynCorp Int'l was discussing a FUTSA claim,
not a DTSA claim. Unlike a DTSA claim, a FUTSA claim does not
require a connection to interstate or foreign commerce. See
Compulife Software Inc. v. Newman, 959 F.3d 1288, 1310 (11th Cir.
2020).

The FAC's factual assertion that Sabin misappropriated
certain information does not provide supplemental facts showing a
relation to interstate commerce. Similarly, the conclusory
statement in ¶ 135 of the FAC is not sufficient. See Wouaff Wouaff
LLC v. McElroy, No. 618CV418ORL41TBS, 2018 WL 6620601, at *2 (M.D.
Fla. Nov. 1, 2018), report and recommendation adopted sub nom.
Wouaff Wouaff LLC v. McElory, No. 618CV418ORL41TBS, 2019 WL 1470263
(M.D. Fla. Apr. 3, 2019)(dismissing DTSA claim because "[n]o facts
[were] pled to support th[e complaint's] conclusion" that "[t]he
Trade Secrets relate to services used or intended for use in
interstate commerce.")

KOVA argues that the alleged trade secrets at issue are in
fact related to interstate commerce because KOVA "advertise[s its]
services to customers interstate via its website" and the client
information Sabin allegedly took relates to "customers with
principal places of business or managers located outside of Florida
. . . ." (Doc. #63, pp. 9-10.)  But the FAC itself makes no such

assertions, and "facts contained in a motion or brief 'cannot substitute for missing allegations in the complaint.'" <u>Dorman v. Aronofsky</u>, 36 F.4th 1306, 1317 (11th Cir. 2022)(quoting <u>EEOC v. Catastrophe Mgmt. Sols.</u>, 852 F.3d 1018, 1030 n.5 (11th Cir. 2016)). Likewise, the affidavit attached to KOVA's brief—attempting to show the principal place of business of the involved clients—cannot be considered by the Court.[1]

The Court grants the motion to dismiss Count II. Because KOVA may be able to plausibly allege a nexus between its alleged trade secrets and interstate or foreign commerce, the claim will be dismissed without prejudice.

---

[1] The Court declines KOVA's invitation to construe Sabin's challenge to the DTSA's second element as a "challenge to the Court's subject matter jurisdiction" under Rule 12(b)(1). (Doc. #68, p. 2.) "Properly stated, interstate commerce is an element—albeit a jurisdictional element—of a [DTSA] claim" that can be properly challenged by a 12(b)(6) failure to state a claim motion, and a "motion to dismiss for lack of jurisdiction, pursuant to Rule 12(b)(1) or 12(h)(3), is inappropriate in such cases unless the interstate commerce claim is patently frivolous." <u>McCallum v. City of Athens, Ga.</u>, 976 F.2d 649, 650 n.1 (11th Cir. 1992)(quoting <u>George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.</u>, 554 F.2d 551, 554 n. 3 (2d Cir. 1977)). Sabin does not argue that the interstate commerce claim is patently frivolous so his challenge is properly under 12(b)(6).

The Court will not strike KOVA's brief or its exhibits, as Sabin requests under Rule 12(f) (Doc. #57), because "motions to strike are more properly filed in reference to pleadings, not briefs." <u>In re Fancher</u>, 802 F. App'x 538, 544 (11th Cir. 2020)(per curiam)(citing Fed R. Civ. P. 12(f)). Additionally, striking is unnecessary since the Court has not relied on the exhibits.

### C. Count III: FUTSA Claim

"The Florida Uniform Trade Secrets Act ('FUTSA') provides a cause of action for the misappropriation of trade secrets." Yellowfin Yachts, Inc. v. Barker Boatworks, LLC, 898 F.3d 1279, 1297 (11th Cir. 2018)(citing Fla. Stat. §§ 688.001–009). "To prove liability under FUTSA, a plaintiff must show that '(1) it possessed a 'trade secret' and (2) the secret was misappropriated.'" Fin. Info. Techs., LLC v. iControl Sys., USA, LLC, 21 F.4th 1267, 1273 (11th Cir. 2021)(quoting Yellowfin Yachts, LLC, 898 F.3d at 1297). Sabin argues that Count III fails to sufficiently state all the elements of the state-law trade secrets claim.

### (1)  Existence of Trade Secret

Sabin presents two arguments as to the first element: (1) the FAC fails to identify the trade secrets with sufficient specificity, and (2) KOVA has not shown their information was protected by anything more than an implicit understanding.  The Court finds that the FAC survives both arguments.

A "trade secret" is:

information, including a formula, pattern, compilation, program, device, method, technique, or process that:

(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Fla. Stat. § 688.002(4). To survive Sabin's argument "at the dismissal stage in federal court, the plaintiff need only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret." DynCorp Int'l, 664 F. App'x at 848.

The FAC identifies the trade secrets as an employee's employment agreement, a strategic and development plan for a client, KOVA's year-end balance sheet, KOVA's profit and loss statements, documents detailing commissions paid to KOVA's real estate agents, KOVA's general ledger, the identities of tenants, tenant contact information, expiration dates for leases, rent amounts, and more. (Doc. #30, ¶¶ 104, 107, 108, 110, 155.) These are not "just . . . broad categories of information, such as financial and technical data, but specifically identified financial and technical data, . . . including [tenant] lists, salary and pay differentials, and pricing data related to staffing and business operations." Dyncorp, 664 F. App'x at 849. Plus, for almost each alleged trade secret, the FAC specifies the exact date Sabin allegedly transmitted it. (See Doc. #30, ¶¶ 104, 106, 108.) Therefore, the FAC specifies the alleged trade secrets at issue with adequate specificity to give Sabin notice of the claim against him.

Sabin's argument that the FAC fails to show these alleged trade secrets were sufficiently protected by KOVA also fails. In

the very FAC paragraphs cited by Sabin, (Doc. #50, p. 14, n. 6), KOVA details how it required "all real estate agents with access to this information to enter independent contractor agreements" prohibiting dissemination of much of the same information. (Doc. #30, ¶ 47.) A cursory review of that agreement shows that many of the alleged trade secrets, such as "any list or lists which identify[] any clients," were considered confidential information that should be safeguarded and returned upon termination. (Doc. #30-2, pp. 6-7.) This portion of Sabin's motion is denied.

### (2) Misappropriation

As to the second element, Sabin asserts that he could not have misappropriated KOVA's alleged trade secrets because, as a licensed real estate broker, he is mandated by the Florida Real Estate Commission to perform certain record keeping and preservation duties. (Doc. #50, pp. 16-18.) Sabin also argues that the OA "entitled [him] to inspect and copy [KOVA]'s records" while a member of KOVA. (Id. at 18.) Neither of these arguments justify dismissal of KOVA's FUTSA claim.

A "misappropriation" is the:

(a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

1. Used improper means to acquire knowledge of the trade secret; or

19

2. At the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was:

a. Derived from or through a person who had utilized improper means to acquire it;

b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

3. Before a material change of her or his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Fla. Stat. § 688.002(2). Therefore, under FUTSA a "party can misappropriate another's trade secret by either acquisition, disclosure, or use." Compulife Software Inc., 959 F.3d 1288 at 1311.

The FAC alleges Sabin sent himself and removed from KOVA's property KOVA's alleged trade secrets and began "using [the] trade secret information to solicit KOVA clients," and "using this information for the commercial advantage of Sabin and so that Sabin could compete with KOVA in the commercial real estate industry, so that Sabin would not have to incur the expense and spend the necessary time to develop his own lists of prospective clients and other trade secret information." (Doc. #30, ¶¶ 155-56.) This suffices to establish plausible misappropriation. See Sentry Data Sys., Inc. v. CVS Health, 361 F. Supp. 3d 1279, 1294 (S.D. Fla.

2018)(finding plaintiff's FUTSA claim sufficiently plead where "[plaintiff] has alleged that Defendants misappropriated these trade secrets by using the confidential customer lists to call [plaintiff] customers to persuade them to switch to [defendant] . . . .")

The FAC further states "Sabin had no property management responsibilities as Managing /Qualifying Broker and there was no legitimate business reason for him to access and send himself these records." (Doc. #30, ¶ 112.)  This allegation must be taken as true at this stage of litigation. Sabin cites no authority or case law which suggests Florida Real Estate Commission regulations trump the FUTSA or allow conduct which would otherwise violate Florida law. The Complaint is not required to negate an affirmative defense.  <u>Wainberg v. Mellichamp</u>, 23-11680, 2024 WL 701845, at *3 (11th Cir. February 21, 2024).

Sabin also argues that "the entirety of Plaintiff's allegations regard[] alleged misappropriation [that] occurred during" Sabin's membership in KOVA, for which period the OA "entitled him to inspect and copy company records." (Doc. #50, p. 18.) But this is not the extent of the FAC allegations. The FAC alleges, inter alia, that after "Sabin submitted his resignation . . . thereby triggering his removal from the Company as a Member," (Doc. #30, ¶ 91), "Sabin has . . . solicited multiple KOVA clients" (<u>id.</u> at ¶113) by "using" KOVA's alleged trade secret information.

(Id. at ¶¶ 155-56.) Misappropriation can occur by improperly using trade secrets. See Compulife Software Inc., 959 F.3d at 1311. This portion of Sabin's motion is denied.

### D.  Count V: Breach of Fiduciary Duty Claim

Sabin argues that KOVA's breach of fiduciary duty claim is barred by the Florida independent tort doctrine because it is so intertwined with KOVA's breach of contract claim. (Doc. #50, p. 21.)  "[T]o establish a breach of fiduciary duty under Florida law, a plaintiff must prove three elements: the existence of a fiduciary duty, a breach of that duty, and that the plaintiff's damages were proximately caused by the breach." Med. & Chiropractic Clinic, Inc. v. Oppenheim, 981 F.3d 983, 989 (11th Cir. 2020)(citing Gracey v. Eaker, 837 So.2d 348, 353 (Fla. 2002)).

"The independent tort doctrine is a general principle of law that provides 'a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract.'" Costa Invs., LLC v. Liberty Grande, LLC, 353 So. 3d 627, 632 (Fla. 4th DCA 2022)(quoting Un2jc Air 1, LLC v. Whittington, 324 So. 3d 1, 3 (Fla. 4th DCA 2021)). To survive a motion to dismiss asserting the independent tort doctrine, "[a] plaintiff bringing both a breach of contract and a tort claim must allege, in addition to the breach of contract, 'some other conduct amounting to an independent tort.'" Bedoyan v. Samra, 352 So. 3d 361, 366 (Fla. 3d DCA 2022)(quoting Lamm v. State St. Bank & Tr., 749 F.3d 938, 947

(11th Cir. 2014)); <u>see</u> <u>also</u> <u>HTP, Ltd. v. Lineas Aereas</u>
<u>Costarricenses, S.A.</u>, 685 So. 2d 1238, 1239 (Fla. 1996)(finding
"[f]raudulent inducement is an independent tort in that it requires
proof of facts separate and distinct from the breach of
contract.").

The independent tort doctrine only precludes a plaintiff from
<u>recovering</u> in tort for a contract dispute. "A plaintiff can plead
as many alternative claims as he wants, 'regardless of
consistency.'" <u>Gimeno v. NCHMD, Inc.</u>, 38 F.4th 910, 916 (11th
Cir. 2022)(quoting Fed. R. Civ. P. 8(d)(3)). The breach of
fiduciary relationship claim will therefore not be dismissed. This
portion of Sabin's motion is denied.

**E. Count VI: Tortious Interference Claim**

The FAC pleads a claim for "tortious interference with
advantageous business relationships." (Doc. #30, p. 35.) Sabin
argues that the FAC fails to state a cause of action because it
fails to specifically identify the clients with whom he interfered.
(Doc. #50, pp. 23-24.) KOVA disputes that the FAC must identify
the specific clients, but requests an opportunity to amend if need
be. (Doc. #63, pp. 19-20.)

"Under Florida law, the elements of tortious interference with
a business relationship are: (1) the existence of a business
relationship that affords the plaintiff existing or prospective
legal rights; (2) the defendant's knowledge of the business

relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff." Int'l Sales & Serv., Inc. v. Austral Insulated Prod., Inc., 262 F.3d 1152, 1154 (11th Cir. 2001) (citing Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812, 814 (Fla. 1994)). District courts have given arguably inconsistent answers to whether Florida law requires plaintiff to identify the clients by name in a complaint. Compare Kassenoff v. Harvey, 3:23CV24085-TKW-ZCB, 2024 WL 562738, at *8 (N.D. Fla. Feb. 8, 2024), with Maxi-Taxi of Florida, Inc. v. Lee Cnty. Port Auth., 2:07-CV-82-FTM-34SPC, 2008 WL 11430005, at *7 (M.D. Fla. Mar. 31, 2008), and EmCyte Corp. v. XLMedica, Inc., No. 2:19-CV-769-JES-NPM, 2022 WL 394392, at *10 (M.D. Fla. Feb. 9, 2022).

The Court concludes that Count VI is adequately stated. By identifying specific instances (see Doc. #30, ¶¶ 115, 117) that Sabin has "solicited multiple KOVA clients," (id. at ¶ 113), as well as the specific client data that was allegedly taken, (id. at ¶¶ 104, 108-09), including "tenant leases," (id. at ¶ 110), the AC has plausibly identified a group of clients with whom KOVA has business relationships and that Sabin has interfered with. While it has not specifically named any clients, its allegations are sufficient. This portion of Sabin's motion is denied.

**F. Count VII: Declaratory Judgment Claim**

Sabin's final argument is that KOVA's declaratory judgment claim is duplicative and redundant of the breach of contract claim. (Doc. #50, pp. 24-25.) KOVA counters that its declaratory judgment claim is not duplicative because it is "forward-looking" in the sense it "seeks a declaration that Sabin will be, for the duration of the restricted period, required to comply with his contractual obligations," unlike its breach of contract claim, which alleges Sabin previously breached his contractual obligations. (Doc. #63, p. 16.)

This Court has previously refused to dismiss declaratory judgment claims simply because of companion breach of contract claims, explaining that:

> While "some courts dismiss claims for declaratory relief where the plaintiff alleges a parallel breach of contract claim," others "allow the declaratory claim to travel with the breach of contract claim." [Loc. Union No. 808 Iron Workers Pension & Annuity Fund v. Fid. & Deposit Co. of Maryland, No. 6:13-CV-1213-ORL-22KRS, 2013 WL 12155443, at *3 (M.D. Fla. Dec. 24, 2013)] (citing Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Solutions, Inc., 744 F. Supp. 2d 1305, 1310 (S.D. Fla. 2010)). Additionally, even assuming Plaintiff's declaratory judgment claims are redundant of the breach of contract claims, a motion to dismiss "tests a claim's plausibility – not redundancy." Massey Constr. Grp., Inc. v. Hartford Ins. Co. of the Midwest, No. 2:19-CV-708-SPC-NPM, 2019 WL 5863897, at *2 (M.D. Fla. Nov. 8, 2019) (citing Michael v. Wal-mart Stores E., LP, No. 6:14-cv-579-Orl-40DAB, 2014 WL 5502442, at *2 (M.D. Fla. Oct 30, 2014)) (stating a redundant claim should not be dismissed under Rule 12(b)(6) if it is valid). Further, the "federal Declaratory Judgment Act and Rule 57 allow for a declaratory judgment even if there is another

adequate remedy." <u>Id.</u> (citing <u>Blitz Telecom Consulting, LLC v. Peerless Network, Inc.</u>, 151 F. Supp. 3d 1294, 1303 (M.D. Fla. 2015)). <u>See</u> <u>Banks v. USAA Casualty Insurance Company</u>, No. 5:19-CV-189-OC-30PRL, 2019 WL 5265356, at *1 (M.D. Fla. May 10, 2019) (holding that the duplicative nature of the declaratory judgment and breach of contract claims did not, alone, warrant dismissal because Rule 8(d) allows pleading in the alternative).

<u>United Church of Marco Island, Inc. v. Lexington Ins. Co.</u>, No. 2:23-CV-331-JES-KCD, 2023 WL 4865729, at *2 (M.D. Fla. July 31, 2023)(quoting <u>Collaboration Betters the World, Inc. v. Hertz Corp.</u>, No. 2:23-CV-131-JES-KCD, 2023 WL 4705837, at *3 (M.D. Fla. July 24, 2023)).

In any event, the declaratory judgment claim here seeks declarations that the parties' agreement is valid and enforceable, that Sabin must comply with it, and "that Sabin is not permitted as a matter of law to solicit, entice, accept work involving, or otherwise interfere with the relationship of any client or prospective client of KOVA for one year." (Doc. #30, ¶¶ 187-89.) This is well within the ambit of the Declaratory Judgment Act. <u>See</u> 28 U.S.C § 2201(a)(stating that federal courts may "declare the rights and other legal relations of any interested party seeking such a declaration"). This portion of Sabin's motion is denied.

Accordingly, it is now

**ORDERED:**

1. Counts IV and VIII are dismissed pursuant to the voluntary dismissal by Plaintiff (Doc. #63, p. 20 n.24) pursuant to Fed. R. Civ. P. 41(a)(1)(A).

2. Defendant's Motion to Dismiss (Doc. #50) is **GRANTED IN PART AND DENIED IN PART** as follows:

    a. Count I is **STAYED**. On or before May 15, 2024, and for every ninety days thereafter until arbitration is complete, the parties shall file a status report that informs the Court of the status of arbitration.

    b. Count II is dismissed without prejudice.

    c. Otherwise, Defendant's motion is denied.

3. Defendant's Motion to Strike (Doc. #67) is **DENIED.**

4. Plaintiff may file a Second Amended Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this ___6th___ day of March, 2024.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Parties of record