UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KOVA COMMERCIAL OF NAPLES,
LLC,

       Plaintiff,

v.                                    Case No:  2:23-cv-614-JES-KCD

TODD SABIN,

       Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on Todd Sabin's (Sabin or Defendant) Motion to Dissolve Amended Preliminary Injunction (Doc. #77) filed on March 13, 2024. KOVA Commercial of Naples, LLC (KOVA or Plaintiff) filed a Response in Opposition (Doc. #80) on March 27, 2024. For the reasons set forth below, the motion is denied.

## I.

To summarize the previously recounted background (Doc. #76, pp. 1-3): KOVA is a commercial real estate brokerage firm. Sabin became KOVA's Managing/Qualifying Broker in 2016 after executing an Operating Agreement (OA) and a Non-Competition and Non-Solicitation Agreement (NCNSA) with KOVA. By 2023, the relationship had deteriorated and Sabin resigned. KOVA then filed this lawsuit, asserting eight counts against Sabin: (1) breach of contract; (2) violation of the Defend Trade Secrets Act (DTSA); (3) violation of Florida's Uniform Trade Secrets Act (FUTSA); (4)

misappropriation of confidential information; (5) breach of fiduciary duty; (6) tortious interference with advantageous business relationships; (7) declaratory judgment; and (8) injunctive relief. (See Doc. #30.) KOVA made clear that it brought the claims exclusively under the OA, not the NCNSA. (See id. at p. 5 n. 1.)

KOVA moved for a Temporary Restraining Order (TRO) and a Preliminary Injunction (PI), (Doc. #31), and the Court "consider[ed] KOVA's motion by evaluating its breach-of-contract claim." (Doc. #42, p. 9.) Finding that KOVA met the requisites for a preliminary injunction, the Court issued a preliminary injunction (Doc. #43) and later an Amended Preliminary Injunction. (Doc. #66.)

Sabin thereafter filed a motion to dismiss the Complaint (Doc. #50), arguing in pertinent part that, pursuant to the NCNSA's arbitration provision, the breach-of-contract claim should be resolved by arbitration. After finding the OA and the NCNSA constituted one contract under Florida's contemporaneous instrument rule and incorporation by reference doctrine, the Court held that the breach-of-contract claim was indeed subject to arbitration and stayed that claim under § 3 of the Federal Arbitration Act (FAA).[1] (Doc. #76, pp. 10-11.)

_____

[1] KOVA has since filed a Second Amended Complaint (Doc. #78), for which another motion to dismiss (Doc. #81) is currently

Sabin now argues that the amended preliminary injunction must be dissolved "because the parties did not agree nor contemplate that interim injunctive relief pending arbitration could be entered by a court.  This Court found an enforceable arbitration agreement and therefore all of Plaintiff's claims related to Count I, including those for injunctive relief, must be addressed by the arbitrator and not by this Court." (Doc. #77, p. 1.) KOVA disagrees, but alternatively moves for the Court to reconsider and expand the basis for the amended preliminary injunction to include other claims. (Doc. #80.)

**II.**

As this Court has previously recognized, "[c]ourts may 'grant interim injunctive relief pending arbitration in order to preserve the *status quo,* but only if the parties' agreements contemplate such relief.'" Glob. Tel*Link Corp. v. Scott, 652 F. Supp. 2d 1240, 1247 (M.D. Fla. 2009)(quoting Sprint Corp. v. Telimagine, Inc., 923 So.2d 525, 527 (Fla. 2d DCA 2005)). The Eleventh Circuit has also said as much: "In American Express Financial Advisors, Inc. v. Makarewicz, 122 F.3d 936, 939–40 (11th Cir. 1997), for example, we held that a district court, after granting a stay under § 3 [of the FAA], erred in refusing to grant injunctive relief where the parties intended for a court of competent jurisdiction to grant

pending.

- 3 -

injunctive relief pending the arbitration." <u>Variable Annuity Life Ins. Co. v. Laferrera</u>, 680 F. App'x 880, 886 (11th Cir. 2017).[2] The <u>Makarewicz</u> court had reasoned that:

> Under the FAA, upon motion of a party, district courts must compel arbitration of all claims subject to arbitration. <u>See</u> <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 218-19, 105 S.Ct. 1238, 1241-42, 84 L.Ed.2d 158 (1985). On the other hand, "the FAA does not require parties to arbitrate when they have not agreed to do so, . . . nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement." <u>Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.</u>, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989) (citations omitted). Because parties are free to structure their arbitration agreements as they see fit, "they may limit by contract the issues which they will arbitrate." <u>Id.</u> at 479, 109 S.Ct. at 1256. "When deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." <u>First Options of Chicago, Inc., v. Kaplan</u>, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995).

<u>Makarewicz</u>, 122 F.3d at 940.

The parties agree that their agreement controls whether the Court can issue injunctive relief. The question presented by Sabin is "whether the parties' agreement to arbitrate provides for interim injunctions from the courts." (Doc. #77, p. 2.) Sabin says no, while KOVA says yes. After applying the state-law principles of contract interpretation, the Court agrees with KOVA.

---

[2] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." <u>Bonilla v. Baker Concrete Const., Inc.</u>, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).

**III.**

The relevant contract provisions at issue here are as follows:

**Default/Specific Performance.** Each Member agrees with the other Members that the other Members would be irreparably damaged if any of the provisions of this Operating Agreement are not performed in accordance with the specific terms and that monetary damages would not provide an adequate remedy in such event. Accordingly, it is agreed that, in addition to any other remedy to which the non-defaulting Member and/or the Company may be entitled, at law or in equity, the non-defaulting Members and/or the Company shall be entitled to injunctive relief to prevent breaches of this Operating Agreement and specifically enforce the terms and provisions of this Operating Agreement in any action instituted in any court of the United States or Florida having subject matter jurisdiction. Therefore, if party hereto, or the executors, administrators or personal representatives of a decedent, shall institute any equitable action or proceeding to enforce the provisions hereof, any person (including the Company) against whom such action or proceeding is brought hereby waives the claim or defense therein that such party or such executors, administrators or personal representatives has or have an adequate remedy at law, and such person shall not urge in any such action or proceeding the claim or defense that such remedy at law exists.

. . .

**Enforcement of Agreement.** The Company shall be entitled to all rights and remedies available under Florida law to prevent, prohibit or otherwise cease Sabin's violation of the terms of this Agreement including, without limitation, the right to enforce the terms hereof by specific performance and injunction, and the right to seek any and all resulting damages. Sabin acknowledges and agrees that a claim for damages for breach of the provisions herein contained shall not preclude the Company from seeking injunctive or such other forms of relief as may be obtained in a court of law or equity, and that the Company, in lieu of or in addition to the remedy of damages, may seek injunctive relief prohibiting Sabin from breaching or continuing to breach the provisions of this Agreement. Sabin hereby

- 5 -

acknowledges and warrants her experience and
capabilities are such that she will be fully able to
earn an adequate livelihood for himself or herself and
his or her family if this Section should be specifically
enforced by the Company.

. . .

    **Arbitration**. Any dispute or controversy arising
under or in connection with this Agreement that cannot
be mutually resolved by the parties hereto shall be
settled exclusively by arbitration in Naples, Florida
before one arbitrator of exemplary qualifications and
stature who shall be selected jointly by Company and
Individual, or, if Company and Individual cannot agree
on a selection, the arbitrator shall be selected by the
American Arbitration Association (provided that any
arbitrator selected by the American Arbitration
Association shall not, without the consent of the
parties hereto, be affiliated with Company, Individual
or any of their respected affiliates). Judgment may be
entered on the arbitrator's award in any court having
jurisdiction. The parties hereby agree that the
arbitrators shall be empowered to enter an equitable
decree mandating specific enforcement of the terms of
this Agreement. The expense incurred as a result of such
arbitration, including legal fees and out-of-pocket
expenses, shall be borne by the non-prevailing party.

(Doc. #78-1, pp. 35, 41, 42.)[3]

The Eleventh Circuit has summarized the relevant Florida

legal principles for contract interpretation:

In construing the [parties' agreement] here, we are
Erie-bound to apply Florida contract-interpretation
principles. See In re Chira, 567 F.3d 1307, 1311 (11th
Cir. 2009). Accordingly, we will interpret the
[agreement] "in accordance with its plain meaning, and,
unless an ambiguity exists, [will] not resort to outside
evidence or the complex rules of construction to

---

[3] KOVA labeled this exhibit as "Exhibit A." However, the
exhibit appears on the Court's CM/ECF system as Exhibit 1. The
Court will cite each exhibit herein by the numerical number
assigned to it by the Court's CM/ECF system.

> construe the contract." Key v. Allstate Ins. Co., 90
> F.3d 1546, 1549 (11th Cir. 1996) (citations omitted). In
> doing so, we must take care not to create confusion "by
> adding hidden meanings, terms, conditions, or
> unexpressed intentions." Id. (citations omitted). And we
> will construe the [agreement] as a whole and will avoid
> treating terms "as redundant or mere surplusage" if "any
> meaning, reasonable and consistent with other parts, can
> be given to it." Equity Lifestyle Props., Inc. v. Fla.
> Mowing & Landscape Serv., Inc., 556 F.3d 1232, 1242 (11th
> Cir. 2009)

Dear v. Q Club Hotel, LLC, 933 F.3d 1286, 1293-94 (11th Cir. 2019).

Taken together, the relevant contract provisions are reasonably understood to mean that KOVA's breach-of-contract claim is subject to arbitration, and that "Sabin acknowledges and agrees that a claim for damages for breach of the provisions herein contained shall not preclude [KOVA] from seeking injunctive or such other forms of relief as may be obtained in a court of law or equity, and that [KOVA], in lieu of or in addition to the remedy of damages, may seek injunctive relief prohibiting Sabin from breaching or continuing to breach the provisions of this Agreement." (Doc. #78-1, p. 41.)

Sabin's arguments to the contrary are unpersuasive. First, the arbitration provision cannot be read in isolation. In Florida, "[a] key principle of contract interpretation is that 'courts must not read a single term or group of words in isolation.'" Fla. Inv. Grp. 100, LLC v. Lafont, 271 So. 3d 1, 4-5 (Fla. 4th DCA 2019)(quoting Am. K-9 Detection Servs., Inc. v. Cicero, 100 So.3d 236, 238 (Fla. 5th DCA 2012)). "[T]he language being interpreted

- 7 -

must be read in conjunction with the other provisions in the contract." Waverly 1 & 2, LLC v. Waverly at Las Olas Condo. Ass'n, Inc., 242 So. 3d 425, 428 (Fla. 4th DCA 2018)(citing Royal Oak Landing Homeowner's Ass'n v. Pelletier, 620 So.2d 786, 788 (Fla. 4th DCA 1993)). This is highlighted by the agreement, which states that "[t]he provisions of this [agreement] shall be applied and interpreted in a manner consistent with each other so as to carry out the purpose and intent of the parties hereto . . . ." (Doc. #78-1, pp. 34-35.) By including the arbitration provision alongside the other two provisions, it is clear the parties intended to preserve their ability to seek injunctive relief in court even if the claim was subject to arbitration.

Second, Sabin's interpretation would essentially require the other two provisions to be ignored and discarded. This cannot be done. "We must read the contract to give meaning to each and every word it contains, and we avoid treating a word as redundant or mere surplusage 'if any meaning, reasonable and consistent with other parts, can be given to it.'" Equity Lifestyle Properties, Inc. v. Fla. Mowing And Landscape Serv., Inc., 556 F.3d 1232, 1242 (11th Cir. 2009) (quoting Roberts v. Sarros, 920 So.2d 193, 196 (Fla. 2d DCA 2006)). "When we interpret a contract, we cannot do so in a way that renders a provision meaningless so long as there is a reasonable interpretation of the contract that avoids that result." Kozel v. Kozel, 302 So. 3d 939, 950 (Fla. 2d DCA 2019).

Interpreting the contract to require arbitration of the breach-of-contract claim but allowing KOVA to seek interim injunctive relief in the courts gives meaning to all three contractual provisions.

This interpretation of the contract is not inconsistent with the policy favoring arbitration. The First, Second, Third, Fourth, Sixth, and Seventh Circuits have concluded "that the entry of a preliminary injunction actually fosters the FAA's liberal policy toward arbitration by ensuring that the status quo is maintained so that the arbitration proceedings remain meaningful." Wine Not, Int'l v. 2atec, LLC, No. 8:06-CV-117-T-23, 2006 WL 1766508, at *12 (M.D. Fla. June 26, 2006)(collecting cases). Additionally, the parties' arbitration clause explicitly mentions the American Arbitration Association and "Rule [38(c)] of the American Arbitration Association's Commercial Arbitration Rules provides that a 'request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.'" Ford of Kendall, LLC v. Lemus, No. 23-23978-CIV, 2024 WL 262739, at *2 (S.D. Fla. Jan. 24, 2024).

Finally, KOVA's current position is not contradictory to a prior position. KOVA previously conceded there was an agreement to arbitrate, but argued that it did not apply: "As KOVA asserts claims under the OA and not the NCNSA, KOVA's claim for breach of

- 9 -

the OA is not subject to the arbitration provisions in the NCNSA."
(Doc. #63, p. 7.) The Court disagreed, concluding that "[s]ince
the NCNSA is part of the contract, its arbitration clause is
applicable." (Doc. #76, p. 10.)  Sabin "offer[s] no persuasive
reason to conclude that § 3 [of the Federal Arbitration Act]
affects the issue of temporary injunctive relief." <u>Variable
Annuity Life Ins. Co.</u>, 680 F. App'x at 886.

Accordingly, it is hereby

**ORDERED**:

Defendant's Motion to Dissolve Amended Preliminary Injunction
(Doc. #77) is **DENIED**.

**DONE and ORDERED** at Fort Myers, Florida, this __23rd__ day
of April, 2024.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

- 10 -